UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVEL MANAGEMENT, INC.,

        Plaintiff,

v.                                              CIVIL CASE NO. 07-10387
                                              HON. MARIANNE O. BATTANI

DIAMOND TRANSPORTATION GROUP, and
CLAUDIA POST,

        Defendants.

_____/

**OPINION AND ORDER**

**I.    INTRODUCTION**

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. # 19) and Defendants' Cross-Motion for Summary Judgment (Doc. #22). Both parties have brought breach of contract claims against one another arising out of a Loan Agreement and a Consulting Agreement between the parties. Because the evidence for Defendant's defenses to the breach of contract claim is insufficient, and because Defendant offers inadequate evidence to support its competing claim of breach, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's motion.

**II.    STATEMENT OF FACTS**

Plaintiff Travel Management Inc. and Defendants Diamond Transportation Group and Diamond Transportation Group President and sole shareholder Claudia Post ("Defendant", for

1

sake of clarity) entered into an unusual business arrangement in February 1994. Instead of Plaintiff simply investing money in Defendant in return for stock ownership, Plaintiff and Defendant entered into two transactions that together were the equivalent of such an investment. Plaintiff and Defendant simultaneously entered into (1) a Loan Agreement by which Defendant ultimately received $100,000 from Plaintiff and Plaintiff was given a 4% beneficial ownership interest (but no stock)[1], and (2) a Consulting Agreement by which Plaintiff was paid a certain percentage of Defendant's gross income ("Consulting Fee"), with the percentage linked to the amount of the loan.[2] The Consulting Agreement stated that Plaintiff would provide Defendant with "advice in the areas of the [Plaintiff's] business, management and financial planning" upon request. Both agreements may be terminated by either party with 60 days notice, providing that Defendant would have to repay Plaintiff for the value of the beneficial interest. The stated motivation for structuring the transaction in such a way was that it would give the parties certain tax benefits.

This business arrangement soon faltered, and Plaintiff sued Defendant in 1997 for breach of contract, alleging a lack of payment. The parties settled the lawsuit out of court in 1998, and executed a Settlement and Amendment Agreement (the "Settlement"). In the Settlement, the parties agreed that: (1) the Loan and Consulting Agreements would continue in force; (2) the

---

[1] Defendant received a 1% beneficial interest for every $25,000 loaned. The loan carried no interest, but had a nominal repayment schedule of $500 a month.

[2] E.g., when the loan amount was $25,000 the percentage of revenue was 0.25%, and when it was increased to $100,000 the percentage was increased to 1.0%. The agreement was amended and the percentage due to the Plaintiff was increased each time the loan amount was increased (in March and September of 1994).

principal owed Plaintiff under the loan agreement had increased to $123,000; (3) Defendant was to pay Plaintiff $13,000 in interest on the loan (the "Interest Payment"); (4) the Interest Payment and any unpaid Consulting Fees going forward were to themselves accrue interest at 8.5%; (5) going forward, Defendant was to pay Plaintiff $5,000 per month until the Interest Payment and Consulting Fees (and any accrued interest thereon) were paid off; (6) after which, Defendant's normal quarterly Consulting Fees under the Consulting Agreement would resume. All agreements instruct that they are to be construed under Pennsylvania law.

In October 1999, Defendant asked and Plaintiff agreed to reduce the monthly payments under the Settlement from $5000 to whatever the Defendant could reasonably afford. Payments continued sporadically after this modification. Plaintiff alleges and Defendant does not dispute that Defendant stopped making payments altogether in December 2004. Defendant alleges that Defendant requested on-site business consulting under the Consulting Agreement in December 2004, and that the refusal to provide such services led to the payment stoppage, but Defendant presents no evidence to support such a request.[3] Plaintiff contests that such a request was first made in a February 2005 letter (which Plaintiff provides), and Plaintiff refused, citing Defendant's failure to pay as a breach of the Consulting Agreement.

Plaintiff sued Defendant in January 2007, alleging breach of contract and requesting an accounting for money owed. Defendant counterclaimed for breach of contract relating to Plaintiff's alleged failure to provide consulting services. Defendant argues that (1) the Plaintiff

---

[3] Defendant's president, Claudia Post, states in a February 2008 affidavit that she requested and was denied consulting services in May 1998, November 1999, and July 2001. The February 2005 letter is the only physical evidence of a request, however.

3

never intended to provide consulting under the Consulting Agreement therefore it was procured by fraudulent intent; (2) the contract was materially breached by Plaintiff for failure to provide consulting services; (3) the Settlement had been orally modified in 1999 and therefore the payment terms were no longer in effect; and (4) in the alternative, the statute of limitations bars any liability for payments due before January 2003. At the hearing on May 28, 2008, Plaintiff introduced two new arguments: that the loan terms constituted criminal usury and, alternatively, there was no consideration for the Loan Agreement.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show he would prevail on the issue even if all factual disputes are conceded to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Accordingly, in the instant case, this Court evaluates the motions with the rule that it should defer to the opposing parties' factual account whenever that account clashes with the movant's. The Court should keep in mind, however, that the opposing party "may not rest upon the mere allegations or denials of [his] pleading, but... must set forth specific facts showing that

4

there is a genuine issue for trial" Anderson, 477 U.S. at 248 (internal quotations and citation omitted).

IV.   ANALYSIS

Both parties agree that Defendant fell behind in their payments to Plaintiff in 1999, and ceased paying altogether in December 2004. Defendant's summary judgment motion raises a number of claims for why this failure to pay does not constitute a breach of contract on their part. The Court will examine each in turn.

*1. Defendant's Breach of Contract Counter-Claim*

Defendant claims that Plaintiff breached the contract by failing to provide consulting services according to the Consulting Agreement, and therefore they were not required to continue payment. Defendant must show that they "would prevail on the issue even if all factual disputes are conceded to the non-movant." Matsushita Elec. Indus. Co., 475 U.S. at 587. Here, the great weight of the undisputed evidence demonstrates that these contracts existed to provide Plaintiff with an equity interest in Defendant without the formality of actual stock ownership. The contracts, taken together, provided capital from Plaintiff to Defendant, and in exchange bestowed Plaintiff with a beneficial interest in the business and a percentage of the revenue. To construe the Consulting Agreement as a distinct and independent contract would require ignoring the explicit links between the two documents, the fact that the two contracts were amended simultaneously as the Plaintiff's equity contribution increased, and the Settlement Agreement which treated both contracts as part of a common understanding (e.g., treating some of

Defendant's money owed as principal under the Loan Agreement). It would simply defy the uncontroverted evidence to understand either of these agreements as separate contracts.

Analyzing the contracts as parts of a single agreement, the Court cannot find that a failure to provide consulting services constituted a material breach on the part of Plaintiff. Under Pennsylvania law, a breach is not material when the provision breached does not affect the primary benefit of entering the contract. See Widmer, 837 A.2d at 468 (finding that a party was not deprived of the expected benefit and thus must continue payment on the contract). The benefit that Defendant reasonably expected, from all available evidence, is the initial loan/investment in the business, which was used to buy out the minority partner in the enterprise. Because the evidence fails to establish consulting services as a material part of the overall agreement between the parties, Defendant was obligated to continue paying Plaintiff even if Plaintiff had failed to provide consulting services.

Furthermore, even if consulting services were a material part of the contract, the only documentary evidence provided by either side establishes a request by Defendant to provide consulting services in February of 2005. Both sides acknowledge that Defendant's breach – the failure to pay according to the terms of the contract – occurred well before this request. Under Pennsylvania law, a failure to pay is a material breach, and a material breach to a contract entitles the non-breaching party to suspend performance. See Berkowitz v. Mayflower Securities, 317 A.2d 584, 586 (Pa. 1974). Thus, Plaintiff was not in breach of the agreement when it refused to provide consulting services to Defendant in 2005.

Summary judgment is therefore granted on this issue and Defendant's counter-claim for breach of contract is dismissed.

## 2. Fraudulent Inducement

Plaintiff next argues that Defendant's breach of contract claim should be dismissed because the evidence establishes that the contract was fraudulently induced. Fraudulent inducement under Pennsylvania law requires: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury that was proximately caused by the reliance." Eigen v. Textron Lycoming Reciprocating Engine Division, 874 A.2d 1179, 1185 (Pa. Super 2005).

In this case, Defendant's only submitted evidence – the February 2008 affidavit of Defendant Claudia Post and the deposition testimony of Plaintiff's President C. Thompson Wells, Jr. – indicate no false representation or fraudulent intent.[4] The affidavit is silent as to Plaintiff's intent at the time the contract was entered into, and the deposition testimony indicates that while Plaintiff did not "never contemplated" providing consulting services, but that they "would be happy to comply" if consulting was requested. (Wells Dep. at 46). Even if they entered into the contract with the belief that the consulting services would never be requested, this is not evidence of an intent to mislead Defendant.[5] Furthermore, the timing and structure of

---

[4] In this case, proof that the alleged representation – that Plaintiffs intended to provide consulting services – was false would also be proof of a fraudulent intent.

[5] In the deposition that Defendant relies upon to show Plaintiff's intent to not perform the consulting services, Defendant's counsel never actually inquires as to Plaintiff's intent:

7

the Loan Agreement (and the subsequent amendment to the Consulting Agreement simultaneous with an increase in the loan amount) indicate that the Consulting Agreement was to act as a vehicle for payment on the investment. There is no evidence that Plaintiff's intent when entering into the contract was fraudulent, and thus no evidence that their representation to provide consulting services was false. Defendant's motion is denied as to this claim.

*3. Modification*

Defendants claim in their response to Plaintiff's summary judgment motion that because the breach claim was based on a contract that had been modified, summary judgment should be denied. However, under Pennsylvania law, "a modification does not displace a prior valid contract; rather, the new contract acts as a substitute for the original contract, but only to the extent it alters it." Melat v. Melat, 602 A.2d 380, 385 (Pa. Super. 1992). Therefore, the

---

**Q:** ... The consulting agreement didn't really anticipate or have any expectations of any consulting services, is that correct?
**A:** That is correct, to any great degree.
**Q:** What degree was there consulting services?
**A:** Well, I mean, if they wanted consulting services, to the extent that they would be reasonably easy to perform, I mean, we would be happy to comply. We want the company healthy but it was never contemplated that that would be a large time-consuming aspect of the collection.
...
**Q:** In terms of the consulting services that you were willing to perform, what would those have been?
**A:** Whatever they – well, whatever they wanted within reason.
(Wells Dep., at 45-47).

8

modification in October 1999 which changed the payment schedule did not invalidate the Settlement.

Both parties agree that they modified the contract to allow for slower and more flexible repayment of the Settlement. However, at no point did the Plaintiff agree to forego any and all monthly payments, and no consideration was offered in return for such a benefit to Defendant – in other words, there was no modification to the core terms of the contract. As such, Defendant's argument that the modification should therefore bar Plaintiff from bringing a claim for breach of the Settlement is not at all valid. The Court denies summary judgment on this issue.

### 4. Statute of Limitations

The Pennsylvania statute of limitations for breach of contract is 4 years. 13 PA. CONS. STAT. § 2725; 42 PA. CONS. STAT. § 5525. In cases involving claims for monetary payments due under an agreement, the breach occurs on the date that the party fails to make payment. See Packer Society Hill Travel Agency v. Presbyterian Univ. of Pennsylvania Med. Ctr., 635 A.2d 649, 652 (Pa. Super. 1993). Plaintiff does not contest this point, as they have found that the amount at issue from payments due prior to January 24, 2003 is a total of $780. Therefore, the Court grants Defendants' motion to bar recovery of payments due prior to January 24, 2003.

### 5. Lack of Consideration and Usury

Defendants introduced two unpersuasive arguments at the motion hearing: (1) that the contract lacked fair consideration and was thus unenforcable, and (2) that, were the contract

9

enforcable, the terms would constitute criminal usury. Because neither of these arguments were briefed or plead, and Plaintiff was given no opportunity to respond nor even any notice of the new arguments, the Court declines to entertain them.

*6. Plaintiff's Breach of Contract Claim*

Finally, Plaintiff argues that summary judgment should be granted in favor of their breach of contract claim. The uncontested evidence supporting their claim is sufficient to meet this standard – they have provided evidence of a valid contract, have shown that money was owed under the contract, that the money was not paid, and that they met the obligations of the contract prior to the cessation of payments by Plaintiff. See Part IV-1, supra. Defendant's arguments against Plaintiff's motion are identical to the arguments made in favor of their summary judgment motion, and are rejected by this Court. See Parts IV-2 through IV-5, supra.

As such, the Court finds that Plaintiff has met the burden of proving that there is "no factual dispute that could affect the legal outcome on the issue." Anderson, 477 U.S. at 248-49. Summary judgment is therefore granted on Plaintiff's breach of contract claim.

## V. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Cross-Motion for Summary Judgment (Doc. #22) is **GRANTED** as to the uncontested statute of limitations defense only and **DENIED** as to all other claims. Defendants' breach of contract claim is **DISMISSED**. Plaintiff's Motion for Summary Judgment (Doc. # 19) is **GRANTED**, with the limitation that the recovery be limited to payments due after January 24, 2003 only.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: June 9, 2008

### CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK